IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

McCOURTNEY LEDAVIS MONGHAN,       :

    Petitioner,                  :
                            CIVIL ACTION 09-0750-WS-M
v.                               :
                       CRIMINAL ACTION 08-00152-WS-M
UNITED STATES OF AMERICA,        :

    Respondent.                  :


## REPORT AND RECOMMENDATION


Pending before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 43). This action was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 8(b) of the Rules Governing Section 2255 Cases. It is now ready for consideration. An evidentiary hearing was held on September 8, 2011. It is recommended that Petitioner's Motion to Vacate (Doc. 43) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner McCourtney LeDavis Monghan. It is further recommended that Petitioner is not entitled to a certificate of appealability and, therefore, not entitled to appeal *in forma pauperis*.

1

Petitioner was indicted on April 25, 2008 for willfully and knowingly conspiring to possess, with the intent to distribute, crack cocaine, a schedule II controlled substance, in violation of 21 U.S.C. § 846; and seven counts of possessing, with intent to distribute, crack cocaine in violation of 21 U.S.C. § 846(a)(1) (Doc. 1). On July 24, 2008, Monghan entered into a plea agreement in which he pled guilty to the first count of the indictment; specifically, Petitioner pled guilty to willfully and knowingly conspiring to possess, with the intent to distribute, crack cocaine in violation of 21 U.S.C. § 846 (Doc. 26). United States District Judge Steele accepted the guilty plea and found Petitioner guilty (Doc. 34). On November 20, 2008, Judge Steele sentenced Monghan to twenty years on the conviction, ten years of supervised release following his release from prison, and an assessment of one hundred dollars (Doc. 41). Petitioner did not appeal the conviction or sentence (*see* Doc. 43, p. 1).

Petitioner filed his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on November 15, 2009, in which he raised the following claims: (1) He was improperly sentenced; and (2) his attorney rendered ineffective assistance (Doc. 43). Respondent filed a response on February 23, 2011

2

(Doc. 57) to which Petitioner replied (Doc. 58).

Monghan has raised two different claims in asserting that he was improperly sentenced. Those claims are that (a) the most recent guidelines were not used in sentencing him; and that (b) he should have been sentenced using a one-to-one ratio of cocaine for crack (Doc. 43).

The Government, in its response, has argued that Petitioner cannot raise these claims in this petition. Respondent first asserts that the claim that the most recent guidelines were not used in sentencing him can only be properly brought pursuant to an 18 U.S.C. § 3582(c)(2) motion (*see* Doc. 57, p. 5). Respondent further asserts that Monghan's claim that he should have been sentenced under a one-to-one ratio is without merit as he has misread the caselaw (Doc. 57, pp. 5-6). In any event, the Government has also argued that Petitioner cannot bring these claims because he waived them in his plea agreement and that they would be procedurally defaulted because he did not raise them on direct appeal (Doc. 57, p. 6 n.3).

In his reply brief, Petitioner admits that, pursuant to his plea agreement, he cannot raise these two claims (Doc. 58, p. 1) ("Petitioner is in agreement with the Government that his plea agreement prevents him from challenging parts of his conviction

and sentence other than Ineffective Assistance of Counsel which was the subject of this motion"). Therefore, with this admission, the Court finds that these two claims are not properly brought in this action and will not discuss them.

Monghan has also raised two different claims in asserting that his attorney rendered ineffective assistance. Those claims are that his attorney was ineffective in that he failed to bring to the Court's attention that (a) he had only a minor role in the conspiracy; and that (b) he should have been given a downward departure on his sentence because of his severe medical impairments (Doc. 43, pp. 4-5). Petitioner has also asserted that his attorney was ineffective in not raising these claims on direct appeal, though requested to do so (*id.*). The Court will first address the two claims as they relate to his attorney's failure to raise them at the district court level; then the Court will address Monghan's attorney's failure to file an appeal on his behalf.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court defined the showing a habeas petitioner must make to prevail on an ineffective assistance claim:

4

> First, the defendant must show that
> counsel's performance was deficient. This
> requires showing that counsel made errors so
> serious that counsel was not functioning as
> the "counsel" guaranteed the defendant by
> the sixth amendment. Second, the defendant
> must show that the deficient performance
> prejudiced the defense. This requires
> showing that counsel's errors were so
> serious as to deprive the defendant of a
> fair trial, a trial whose result is
> reliable. Unless a defendant makes both
> showings, it cannot be said that the
> conviction . . . resulted from a breakdown
> in the adversary process that renders the
> result unreliable.

*Id.* at 687.

Monghan first claims that his attorney was ineffective in that he failed to bring to the Court's attention that he had only a minor role in the conspiracy. As support for this claim, Petitioner point to the presentence report where the probation officer stated that "Petitioner was not a major player in the conspiracy and in number 10 on page 5 it states that none of the defendants had a clear leadership role in the conspiracy therefore a minor role adjustment was warranted in this instance based on Petitioner's involvement" (Doc. 43, p. 3). Monghan goes on to insist that this circumstance should have been reviewed under 18 U.S.C. § 3553.

The Government has argued otherwise, first pointing out that no presentence report was produced in this action; rather, the argument goes, Monghan is referencing a presentence report from a prior drug conviction (Doc. 57, p. 7). The record shows that the presentence report to which Petitioner refers actually pertains to Monghan's previous felony conviction (Doc. 38). There is an attachment following that report which makes a sentencing recommendation regarding the felony discussed here; however, there is nothing in that recommendation which would suggest that Monghan had only a minor role in the conspiracy which is the subject of this Motion (*see* Doc. 38, Attachment 2). Petitioner's claim otherwise is without merit as he has failed to demonstrate how his attorney was deficient or how he has been prejudiced with regard to his attorney's performance.

Monghan has also claimed that his attorney was ineffective in that he failed to bring to the Court's attention that he should have been given a downward departure on his sentence because of his severe medical impairments. Petitioner asserts that he has end-stage kidney failure, having been on dialysis for eighteen years, and congestive heart failure (Doc. 43, pp. 4, 6).

The Court notes that Monghan's Attorney, on November 24,

2008, filed a Motion for Downward Departure at Sentencing (Doc.

40) which provided the following information:

> 3.   That Defendant, McCourtney Monghan,
> suffers from Chronic Renal Failure,
> Congestive Heart Failure and needs constant
> medical intervention.
> 4.   That Defendant, McCourtney Monghan,
> has been hospitalized approximately seven
> (7) times since his arrest.  His first
> hospitalization was for emergency dialysis.
> His second hospitalization was for an
> infection in the graf that is used in his
> dialysis treatment.  He required surgery and
> was hospitalized for approximately for [sic]
> three (3) weeks.  His third hospitalization
> was for the side effects of not having the
> proper renal diet.  His most recent
> hospitalizations were for blood clots to his
> legs.  During his recent hospitalization in
> October 2008 Defendant was found to need
> aortic valve surgery.
>
> ***
> 8.   That Defendant, McCourtney
> Monghan's life expectancy given the nature
> of his medical conditions would support a
> downward departure from the guidelines.

(Doc. 40).  Petitioner's motion was orally denied in open court.

*United States v. Monghan*, Cr. 08-00152-WS-M (S.D. Ala. November

24, 2008) (Oral Order).  The Court notes that although the

motion was filed four days following the sentencing, Judge

Steele, in the Judgment, specifically recommended that

Petitioner "be incarcerated at a medical facility in order to address his health issues" (Doc. 41, p. 2). The Court notes that when Monghan was sentenced, the sentencing guidelines specifically stated that "[p]hysical condition or appearance, including physique, is not ordinarily relevant in determining whether a departure may be warranted." Comments to U.S.S.G., § 5H1.4. In any event, the guidelines make it clear that the departure is discretionary with the Judge.

The Court finds that Petitioner's assertion that his attorney rendered ineffective assistance in failing to inform the Court of his medical conditions is without merit. Even though an argument could be made that his attorney was deficient for failing to file his motion prior to sentencing, Petitioner has failed to demonstrate prejudice as the record shows that the Court was aware, but chose to recommend incarceration at a medical facility rather than award him a downward departure in his sentence. As Monghan has failed to demonstrate both prongs of *Strickland*, the Court finds that his claim of ineffective assistance is without merit.

Petitioner has also claimed that his attorney rendered ineffective assistance in failing to file an appeal on his behalf, though requested to do so. The Court notes that, in

8

*Evitts v. Lucey*, 469 U.S. 387 (1985), the United States Supreme Court extended *Strickland* to the appellate level, stating that "[a] first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney." *Id*. at 396.

The Court held an evidentiary hearing on September 8, 2011 in which the Petitioner participated via teleconference (*see* Doc. 69). Information Technology Representatives from the Court set up the Courtroom so that judicial personnel, the attorneys, Petitioner, and the testifying witness could all see and hear one another; a phone line was established so that Petitioner and his appointed attorney, W. Gregory Hughes, could privately confer during the hearing (*see* Doc. 69, pp. 3-4). Additionally, the Court recessed periodically so that Hughes and Monghan could have additional time to confer.

The first witness at the hearing was Nadine Monghan, Petitioner's Mother, who testified that her daughter-in-law had retained Donnis Cowart, a Tuscaloosa attorney, to represent Petitioner. The Witness met with Cowart and agreed to pay him two thousand dollars. Nadine testified that she talked with Cowart about once every two weeks and, more specifically, that she talked with him before sentencing as well as the day

9

Petitioner was sentenced. The Witness stated that, following sentencing, she talked with Cowart and told him that she and her son wanted him to appeal the sentence; they spoke in a small room outside the courtroom. Petitioner's Mother also talked to Cowart about the appeal several days after sentencing. About a month after sentencing, Nadine called the lawyer and asked about the appeal. Overall, she talked with Cowart five or six times about the appeal; she had called him many more times than those five or six, but the attorney was not in his office and did not return her calls. The Witness learned from her son, only about a year before this hearing, that no appeal had been filed. Nadine testified that she knew of the Plea Agreement, and that it had an appeal waiver in it, but that she thought her son's sentence was going to be ten years and hoped that it could be shortened. The Witness stated that she had no legal training. Petitioner's Mother testified that she and her son wanted an appeal and were told by Cowart that he would take care of it.

The next witness was Cecilia Mitchell, Petitioner's Fiancé. She introduced Monghan to Cowart, who had been retained by her sister. The Witness stated that she was not in Court when Petitioner was sentenced as she had to work that day. The Fiancé talked with Cowart about an appeal several days after the

sentencing; she also talked with him several months later about the appeal and thought, based on the conversation, that it was going forward. Mitchell testified that she talked with Cowart about Monghan's case every other day, by phone and in person at his office, for a period of about three months after the sentencing; after that, conversation tapered off. The Fiancé talked with Cowart several months after sentencing about several motions that he was filing. Mitchell testified that she had only found out five months before the evidentiary hearing that the appeal had never been filed; she was never told by Cowart that there was no appeal. Mitchell first learned of this hearing about three weeks ago. The Witness testified that she thought that the twenty-year sentence was too long; although she knew about the Plea Agreement, she did not know that Monghan received the mandatory minimum sentence. Mitchell testified that Cowart had suggested that she become a cooperating witness in an effort to get Petitioner's sentence reduced; she had met with a guy named Phillip Meyers toward that end, but he never got back in touch with her. The Fiancé said that she thought that this was being pursued in addition to the appeal that was to have been filed. A certified letter was admitted into evidence (Government Ex. 1), hand-written by the Witness to

Cowart on April 19, 2010, asking what was going on in Monghan's case; the letter discussed working as a witness and indicated that Mitchell knew that they still owed Cowart money, but makes no reference to an appeal (*id.*). At the hearing, the Fiancé stated that although they had owed money to Cowart at the time she wrote the letter, he had indicated that it was not a problem. The Witness stated that she knew that Cowart represented Monghan and that he would be the one who would have to ask the attorney for an appeal. The Fiancé testified that if Cowart got Monghan the minimum sentence, she would think he had done a good job; she admitted, though, that she did not have any legal training, so she did not really know if he had done a good job or not.

The next witness was Kimberly Kemia Mitchell who knew Monghan as her sister's fiancé and the father of her sister's two children. Mitchell knew Cowart because she had been a roommate with Cowart's son in college; knowing that he had done some work as a criminal attorney, she got Cowart to represent Monghan and set up the meeting between the lawyer and the family. The Witness testified that she talked with Cowart about six times before sentencing, by phone primarily but once in person at his office, and was in court on the day of sentencing.

Mitchell remembered telling Cowart, after sentencing, but that same day, that they wanted him to file an appeal. This meeting took place outside the courthouse, near Regions Bank; Monghan's mother was present at that meeting. The Witness also told Cowart two months later that they wanted to appeal. Though she thought Cowart was appealing Monghan's case, she found out one month before the evidentiary hearing that one had not been filed; she only learned this in talking with Attorney Hughes. Mitchell testified that she talked with Cowart ten-to-twelve times during the three years after sentencing; some of those discussions were by phone though some were in person. In four-to-five of those conversations, they talked about an appeal. Cowart never told her that he had not filed an appeal. The Witness stated that she was present with her sister for the cooperating witness conversation, but she did not participate in the discussion. Mitchell testified that she did not recall the length of Monghan's sentence and did not know that he had received the minimum sentence. She also understood that Cowart represented Monghan and that he would have to be the one to ask for an appeal.

As the next witness, Petitioner testified that he first met Cowart in 2008 when he replaced his appointed attorney; Cowart

came to see him twice and they talked by phone fifteen-to-twenty times. Monghan testified that he signed a Plea Agreement for ten years; he said that Cowart told him that his two cases were both for ten years, but that one of those cases would be dropped. Petitioner did not find out about his sentence enhancement until sentencing day; he stated that if he had known his sentence was going to be so long, he would have gone to trial. He further stated that he asked his attorney to file an appeal on his behalf in the courtroom directly after sentencing; Cowart told him he would get started that day. Monghan called the attorney the next day, again to press for an appeal. Following his sentencing, Petitioner talked to Cowart, by phone, eight-to-ten times; the attorney repeatedly told him that he was appealing the sentence. Monghan found out otherwise when he arrived at the Springfield facility; when specifically questioned why he did not appeal, Cowart told him that there was nothing to appeal. Petitioner admitted that he could have filed the appeal himself; he also testified that Cowart had recommended that he become a cooperating witness.

On cross-examination, Monghan stated that a fellow inmate had helped him put together his § 2255 petition, though the claim concerning his attorney's failure to file an appeal was

his idea.  Petitioner testified that he asked for an appeal
every time he talked to Cowart; even when he talked to Cowart
about being moved out of metro jail because of the bad
conditions, he asked for an appeal.  Monghan stated that he did
not get copies of the pleadings his attorney filed so he was
unaware of what his attorney was doing.  Petitioner stated that
he chose to make Cowart his attorney, even though he had already
had one appointed by the Court.  He admitted that he pled guilty
because he was guilty; he was very firm in stating, however,
that he was indicted on only two counts and not eight as had
been asserted.  Monghan admitted that he entered into the Plea
Agreement, which included a factual resume, and signed it, but
stated that he did not read it, relying instead on his attorney
to represent his interests; he did not know that the Agreement
indicated that the minimum sentence was twenty years.
Petitioner admitted that he knew how to read and write.  Monghan
acknowledged that the Agreement discussed his being a
cooperative witness; in August 2008, he met with the government
which did not think he was being helpful.  Petitioner wanted to
cooperate to reduce his sentence, thinking that ten years was
the minimum.  He stated that he read the Plea Agreement for the
first time two weeks ago and he now knows that the Plea

Agreement had a minimum sentence and appeal waiver. Nevertheless, Monghan still wants to appeal the fact that the 2004 Presentence Investigation Report (hereinafter *PSI*) was used against him. Cowart always told him that the appeal was going forward. Petitioner was not sure if he wrote his lawyer any letters about appealing his case because he wrote so many different people. Monghan fired Cowart in February 2009 when he arrived in Springfield.

Donnis Cowart, testifying for Respondent, stated that he had been an attorney for sixteen years and was retained by Monghan to represent him on the claims against him in this Court. The attorney stated that he was familiar with the claim Monghan had brought against him and had reviewed his file prior to the evidentiary hearing. Cowart stated that he has a general practice and has had hundreds of criminal clients; he is familiar with rules of responsibility and takes them seriously. Cowart stated that he always discussed appeal with his clients and would file one even when he thought that no claim was appealable; in those circumstances, he has tried to let his client know that he did not think there was anything to appeal and let them hire someone else. The attorney went on to state that filing an appeal is not inconvenient and takes very little

time.  Cowart remembered being hired by Monghan, though not from
the start, and discussing the case; Monghan did not want to go
to trial, so they tried to get him a downward departure by being
a cooperative witness.  Monghan agreed with the strategy.  There
were eight counts in the indictment—one for conspiracy and seven
for distribution; Monghan entered into the Plea Agreement which
dismissed all but the conspiracy count.  Cowart stated that
Monghan read the Agreement in his presence and that the
Agreement included a statement that the statutory minimum
sentence was 20 years, counting enhancement provisions.  The PSI
also indicated that Petitioner faced a sentence of twenty years,
based on a prior felony.  On behalf of his client, the Attorney
filed a motion to dismiss and two motions for emergency relief,
based on Petitioner's health, before sentencing.  An attempt to
cooperate with the Government by several family members began
before sentencing; George May directed them to Dawn Alphonsi.
Attempts to cooperate went on after sentencing while Monghan was
serving his sentence.  The hope was that Petitioner could get a
fifty percent reduction in his sentence; Cowart continued with
this strategy until six months before the evidentiary hearing
when he learned of this action.  The Attorney stated that he
talked with the Mitchell sisters, but they never talked about an

appeal; they knew the strategy of using cooperating witnesses and one of the Mitchell women tried to cooperate. Cowart also talked to Monghan's mother who also knew of the strategy; she never asked him to appeal. Cowart identified Government Exhibit 2, a letter from Monghan to Cowart, postmarked July 7, 2010, which, cursed Cowart and accused him of doing nothing for him but also included information about changes in the crack laws; there was nothing about an appeal in the letter.[1] The Exhibit was admitted into evidence. The Attorney testified that he was not fired in early 2009. Cowart then identified Government Exhibit 4, a receipt for three hundred dollars, received from C. Mitchell, on behalf of Monghan, to Cowart, dated March 2, 2009; the Exhibit was admitted into evidence. Cowart next identified Government Exhibit 3, a letter from Monghan to Cowart, from September 2009, which says nothing at all about an appeal; the Exhibit was admitted into evidence. Cowart testified that Monghan was sentenced to twenty years and that he did not ask for an appeal. The Attorney did not personally think that there was anything to appeal; Monghan did not want to go to trial, so he took the plea.

On cross-examination, Cowart testified that he had only

---

[1]Petitioner had filed this action by the time of this letter.

been involved with five-to-ten federal criminal cases.  After

the sentencing, two of Monghan's family members met with the

Attorney to provide substantial assistance; he talked with

Alphonsi on their behalf.  Cowart stated that he did not recall

specifically what happened immediately after sentencing, but

that Monghan was not surprised by the twenty-year sentence

because he knew it was coming.  The Lawyer also said that an

appeal was not regularly discussed because it was not part of

the plan; he did not remember discussing appeal at all after

either the Plea Agreement or sentencing.  Upon being questioned

by Attorney Hughes, Cowart stated that he was not specifically

familiar with local federal court rule 83.7(b)(1)[2] which requires

advising a client of his right to an appeal; he was, though,

generally familiar with American Bar Association canons which

require discussion of an appeal.  Cowart stated that he

understood trial counsel's obligation to protect a client's

right to appeal.  The Attorney admitted that the denial of his

motion to dismiss was, likely, appealable.  Cowart stated that

he visited Monghan several times in jail and always showed him—

[2]"Unless otherwise ordered by the court, the conclusion of the
client's action occurs when the client is acquitted, sentenced, or the
action is dismissed.  In the event that a defendant in a criminal
action is convicted, retained counsel shall advise the defendant of
his right to appeal and of his right to counsel on appeal.  If
requested to do so by the defendant, counsel shall file a timely

or provided him copies—of what he had filed. Cowart said that he and Monghan knew about the enhancement for a while as it was in the PSI and Plea Agreement; he said that he personally made it known to Monghan on several occasions.

On redirect examination, Cowart testified that the motion to dismiss was part of the appeal waiver so it became moot once the Plea Agreement was entered into. He also stated that the sentence could have been more than twenty years. Cowart stated that Monghan was his client and that he would have filed an appeal if he had asked him to do so. The concludes the evidentiary hearing evidence.

After reviewing the testimony and evidence provided at the evidentiary hearing, the Court finds that Monghan has not demonstrated that his trial attorney failed to file an appeal on his behalf as requested. In reaching this decision, the Court specifically notes the inconsistency in the testimony of Nadine Monghan and Kimberly Mitchell; while the former stated that the three family members had discussed an appeal with Cowart directly after sentencing in a small room outside of the courtroom, the latter testified that the conversation took place outside of the courthouse near Regions Bank. The Court notes

notice of appeal."

that there were other inconsistencies in the testimony provided by Monghan and his family members, but chooses, instead to focus on the testimony of Monghan. Specifically, Monghan himself was not a credible witness as evidenced by the following: his testimony that he wrote a lot of letters to a lot of people, but none have been brought forward indicating that he ever asked for an appeal; his testimony that he never read the plea agreement until about two weeks before the evidentiary hearing even though, in the Agreement, he signs it directly below a paragraph which reads as follows: "I have consulted with my counsel and fully understand all my rights with respect to the offense(s) charged in the Indictment against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it" (Doc. 26, p. 12); again, his testimony that he never read the Plea Agreement until two weeks before the evidentiary hearing is belied by his concession, in a pleading dated March 11, 2011, that his Plea Agreement prevents him from challenging parts of his conviction and sentence (Doc. 58, p. 1); and his testimony that he did not know that he was to be sentenced to twenty years until the day of sentencing is directly contradicted by the Plea Agreement and the PSI report which

clearly show that he was to be sentenced for a statutory minimum of twenty years (Doc. 26, p. 3; Doc. 38, pp. 15-16).  The Court finds that Monghan was not a credible witness.

On the other hand, the Court finds that the testimony of Donnis Cowart was internally consistent and uncontradicted by the evidence of record.  Though the testimony of Monghan and his family members disagrees with the Attorney's account of what happened, the Court has found Monghan's testimony not credible and that of his family members inconsistent with each other's versions of proceedings.

Therefore, the Court finds that Petitioner has not demonstrated that his attorney was ineffective in not filing an appeal on his behalf.

In summary, the Court finds that two claims raised in this Motion are not properly brought in this action; Monghan admits as much.  The Court further finds that Petitioner has failed to demonstrate that his trial attorney rendered ineffective assistance in failing to bring certain matters to the court's attention in both the trial and appellate courts.  The Court further finds that Petitioner has failed to demonstrate that his attorney failed to file an appeal on his behalf.  These claims are all without merit.

Therefore, it is recommended that this Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 43) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner McCourtney LeDavis Monghan.

Furthermore, pursuant to Rule 11(a) of the Rules Governing § 2255 Cases, the undersigned recommends that a certificate of appealability (hereinafter *COA*) in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a COA. 28 U.S.C. § 2253(c)(1). A COA may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the merits of a claim are reached, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Inasmuch as the Court has found that Monghan has failed to assert sufficient facts to

support a claim of constitutional error, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. It is suggested that Monghan will not be able to make that showing.

## CONCLUSION

It is recommended that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 43) be denied. It is further recommended that Petitioner is not entitled to a certificate of appealability and, therefore, not entitled to appeal *in forma pauperis*.

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter

excepted by 28 U.S.C. § 636(b)(1)(A), by filing a
"Statement of Objection to Magistrate Judge's
Recommendation" within fourteen days after being served
with a copy of the recommendation, unless a different time
is established by order.  The statement of objection shall
specify those portions of the recommendation to which
objection is made and the basis for the objection.  The
objection party shall submit to the district judge, at the
time of filing the objection, a brief setting forth the
party's arguments that the magistrate judge's
recommendation should be reviewed *de novo* and a different
disposition made.  It is insufficient to submit only a copy
of the original brief submitted to the magistrate judge,
although a copy of the original brief may be submitted or
referred to and incorporated into the brief in support of
the objection.  Failure to submit a brief in support of the
objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a
Court of Appeals; only the district judge's order or judgment
can be appealed.

2.    **Transcript (applicable where proceedings tape recorded).**
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the
magistrate finds that the tapes and original records in this
action are adequate for purposes of review.  Any party planning
to object to this recommendation, but unable to pay the fee for
a transcript, is advised that a judicial determination that
transcription is necessary is required before the United States
will pay the cost of the transcript.

Done this 14th day of September, 2011.


                          s/BERT. W. MILLING, JR.
                          UNITED STATES MAGISTRATE JUDGE